**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

RUBY M. LUCAS, et al.,            )
                                  )
            Plaintiffs,           )
                                  )        NO. 2:03 CV 422
            v.                    )
                                  )
M.R.S. ASSOCIATES, INC.,          )
                                  )
            Defendant.            )


<u>MEMORANDUM AND ORDER</u>

## I. BACKGROUND

This matter is before the court on cross-motions for summary judgment on

liability filed by both plaintiffs and defendant. Plaintiffs' complaint (now in the form of

the Second Amended Complaint, filed May 13, 2004) alleges that portions of collection

letters sent by defendant M.R.S. Associates, Inc., violate 15 U.S.C. §§ 1692e and 1692g of

the Fair Debt Collection Practices Act ("FDCPA"). Defendant is a debt collector as

defined by the FDCPA. (Pls.' State. of Material Facts Supp. Mot. Summ. J. ¶¶ 3-6).

Plaintiffs assert that the letters at issue are the first collection notices they received from

defendant. (Pls.' Second Am. Compl. ¶¶ 10, 14, 17, 20). The letters read as follows:

> RE: [Original creditor's name, e.g., "CAPITAL ONE"]
> CLT ACCT#: [xxxxx]
> MRS ACCT#: [xxxxx]
> ACCOUNT BALANCE: $[x.xx] (Interest may accrue on
> unpaid balances)[1]

---

[1] The parenthetical "(Interest may accrue on unpaid balances)" appears only in
the letters addressed to plaintiffs Dixon and Smith. (Pls.' Second Am. Compl. Ex. C, D).

Dear [Name],

The above referenced client has placed your account with our office for collection. This decision was made due to your continued failure to meet your contractual obligation. If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter.

If the debt is not in dispute, then you have an important decision to make: honor your contractual obligation and receive significant positive benefits from satisfying the debt or continue not honoring your contractual obligation and face the possibility of negative consequences. The negative consequences are determined by the terms and conditions of your contract, the applicable laws in your state, and our client's willingness to incur additional costs and expenses (which may in turn be passed on to you!).

Clearly our client would prefer to work with you than against you, however, the decision to proceed with further collection activity is determined by you and your willingness to honor your commitment.[2]

Which would you prefer the positive benefits or negative consequences? [sic] The choice is yours!

<u>IMPORTANT CONSUMER INFORMATION</u>
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office [sic] in writing within 30 days after receiving this notice, this

---

[2] At this point in plaintiff Lucas' letter only, defendant offered Lucas the option of satisfying her debt by paying 75% of the balance. (Pls.' Second Am. Compl. Ex. A). The legality of this provision is not at issue in this case.

office will provide you with the name and address of the
original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information
obtained will be used for that purpose. This communication
is from a debt collection agency.[3]

Sincerely,

[M.R.S. representative]

There are two main issues disputed here: (1) whether the statement "If for some
reason you believe this debt is not valid, please review your rights listed at the bottom
of this letter" is confusing to an unsophisticated consumer as to her validation rights;
and (2) whether the reference to an "account balance," along with the additional clause
stating that "[i]nterest may accrue on unpaid balances," with later references to
"contractual obligations," is confusing to an unsophisticated consumer as to the amount
of debt owed.

## II. STANDARD OF REVIEW

A. *Review of claims under the FDCPA*

The FDCPA is designed, in part, to eradicate abusive and aggressive debt
collection practices. 15 U.S.C. § 1692e; *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th
Cir. 2004). Section 1692e generally prohibits the use of false or misleading

---

[3] In plaintiff Lucas' letter only, these two sentences appear after the valediction
(after the M.R.S. representative's signature) rather than directly before it. The legality of
this provision or its placement in the letter is not at issue in this case. (Pls.' Second Am.
Compl. Ex. A).

representations to collect a debt, including the "false representation of the character, amount, or legal status of any debt." § 1692e(2)(A). Specifically at issue in this case is § 1692g, which requires a creditor to include language in the letter disclosing the debtor's right to request validation of the debt, as well as a statement disclosing the amount owed.

The test in the Seventh Circuit for determining whether a creditor's letter constitutes a violation of § 1692e and 1692g of the FDCPA is the understanding of "unsophisticated consumers," who are often the targets of debt collection. *Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414-15 (7th Cir. 2005); *Taylor,* 365 F.3d at 574; *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 564-66 (7th Cir. 2004) (reviewing § 1692e and 1692g claims under the unsophisticated consumer/debtor standard). The Seventh Circuit stands apart from a majority of other circuits employing a "least sophisticated consumer" test, which arguably requires analysis through the eyes of the very last consumer on the sophistication spectrum. The unsophisticated consumer standard instead provides the view of an individual who is "uninformed, naive, or trusting, yet it admits an objective element of reasonableness." *Gammon v. GC Servs. Ltd. P'ship,* 27 F.3d 1254, 1257 (7th Cir. 1994).

The Seventh Circuit noted that it is "impossible to draft a letter that is certain to be understood by every person who receives it" and held that a letter violates the FDCPA "only if it would confuse a significant fraction of the persons to whom it is directed." *Chuway v. Nat'l Action Fin. Servs.,* 362 F.3d 944, 948 (7th Cir. 2004); *see also*

4

*Taylor,* 365 F.3d at 574-75. Courts are to "disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters." *Durkin,* 406 F.3d at 414. Additionally, "a mere claim of confusion is not enough: a plaintiff must show that the challenged language of the letters unacceptably increases the level of confusion." *Id.* at 415 (internal quotation marks omitted).

B. *Summary judgment standard*

The FEDERAL RULES OF CIVIL PROCEDURE mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). RULE 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.

5

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986); *Doe v.*

*R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994).

In viewing the facts presented on a motion for summary judgment, the court

must construe all facts in a light most favorable to the non-moving party and draw all

legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d

231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443. In a cross-motion posture, the court must

bend any factual inferences in the direction of the party "against whom the motion

under consideration is made." *Metro. Life Ins. Co. v. Johnson,* 297 F.3d 558, 561-62 (7th

Cir. 2002); *Hendricks-Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir. 1998).

The Seventh Circuit has developed special nuances for summary judgments in

FDCPA cases, which describe when extrinsic evidence of confusion is necessary to

succeed on or survive a motion. A court has the power to grant an FDCPA plaintiff

summary judgment, without any extrinsic proof of confusion, in certain cases where an

FDCPA violation is clearly evident on the face of the letter. *Durkin,* 406 F.3d at 415.

However, the standard for reviewing a defendant's motion for summary judgment in

an FDCPA case is slightly different. If a statement in a collection letter is confusing or

unclear on its face, then a triable issue of fact has been established without the need for

any additional evidence from the plaintiff (but summary judgment for the plaintiff is

not necessarily warranted). *Chuway,* 362 F.3d at 948. If a statement is not confusing on

its face, however, then "mere speculation that a collection letter confuses the

unsophisticated debtor is not enough for an FDCPA plaintiff to survive an opposing

debt collector's summary judgment motion." *Durkin,* 406 F.3d at 415. A plaintiff must provide "evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Id.; see also Taylor*, 365 F.3d at 575. This extrinsic evidence can come in the form of a consumer survey, or even expert witness testimony. *Durkin,* 406 F.3d at 415.[4]

These nuances are of particular relevance in this case because plaintiffs have provided no extrinsic evidence concerning the confusing nature of the statement in the letter, in the form of a consumer survey, expert testimony, or otherwise. In this case, plaintiffs have only submitted the collection letters at issue and their own affadavits, which describe the nature of the debt they incurred and attest to the authenticity of the submitted letters. Thus, in this case, if part of defendant's letter is confusing on its face, plaintiff may be granted summary judgment on that issue, provided that no other triable issues of material fact regarding that particular FDCPA violation exist. If a statement is not confusing on its face, however, defendant must be granted summary

---

[4] The Seventh Circuit has rejected challenges to the extrinsic evidence requirement applying to plaintiffs fending off a defendant's motion for summary judgment in cases where confusion is not apparent on the face of a letter. *Durkin*, 406 F.3d at 422-23. The plaintiffs in *Durkin* argued that the requirement was inconsistent with the standard measured by the "unsophisticated debtor," who is a hypothetical person whose perceptions cannot be surveyed. *Id.* The Seventh Circuit responded by emphasizing that "[r]equiring extrinsic evidence in situations such as this is not inconsistent with the unsophisticated debtor standard; rather, such evidence is an essential component of the standard. It ensures that unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters do not prevail." *Id.* at 423. Standing firm in its "well-reasoned precedent," the Seventh Circuit upheld its requirement, stating that there were no "supervening developments that would necessitate changing our course." *Id.*

7

judgment on that issue because plaintiffs, having not presented any extrinsic evidence, will have failed to create a triable issue of material fact as to the confusing nature of that statement. With these standards in mind, the court reviews each of the parties' arguments in turn below.

## III. ANALYSIS

A. *Confusing nature of disclosure of validation rights*

Plaintiffs advance two theories as to why the statement beginning "If for some reason" impermissibly confuses debtors as to their validation rights: first, it is confusing because it suggests that debtors must have some reason to request validation, and second, it is a confusing and ineffective disclosure because debtors believing they have no valid reason to dispute the debt will not even read the statement of their rights. (Pls.' Mem. Supp. Mot. Summ. J. 7; Pls.' Reply 3).

The language at issue appears in all four plaintiffs' letters. The first full paragraph of each letter reads:

> The above referenced client has placed your account with our office for collection. This decision was made due to your continued failure to meet your contractual obligation. *If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter.*

(Pls.' Second Am. Compl. Ex. A-D, emphasis added). The letter goes on to explain the possible consequences of not paying the debt, and then, near the end of the letter but before the valediction, discloses the debtor's validation rights as required by the

FDCPA in a paragraph labeled: "<u>IMPORTANT CONSUMER INFORMATION</u>." The parties do not dispute that this disclosure is in accord with the requirements of the FDCPA. The issue in this case is whether the statement beginning "If for some reason" impermissibly confuses the meaning of the disclosure in violation of § 1692g(a)(4) of the FDCPA.

### 1. *Plaintiffs' collateral estoppel argument*

As a preliminary matter, the court must address plaintiffs' claim that the recent decision in *Mendez v. M.R.S. Associates*, No. 03 C 6753, 2005 WL 1564977 (N.D. Ill. June 27, 2005), functions to collaterally estop defendant from arguing that the statement at issue does not violate the FDCPA. Plaintiffs claim that the *Mendez* court granted summary judgment for the plaintiffs in that case because of language in the creditor's letter which is identical to the statement at issue in this case. (Pls.' Mot. to File Add. Auth. 3). Defendant argues that the *Mendez* statement included an extra clause and the holding in *Mendez* was based on the illegality of this problematic additional language, which is not attached to the statement at issue here. (Def.'s Resp. to Pls.' Mot. to File Add. Auth. 2). This court does not agree with either party, but nevertheless holds that defendant's argument is not barred by collateral estoppel because the issue decided in *Mendez* is not the same as the issue in this case.

"For collateral estoppel to bar subsequent litigation, among other things, the issue sought to be precluded must be the same as involved in the prior case." *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002). The *Mendez* court decided that the

following statement violated the FDCPA as a matter of law: "If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter *and contact our office to explain the nature of the dispute.*" *Mendez*, 2005 WL 1564977, at *1 (emphasis added). The only difference between the statement in *Mendez* and the statement at issue in this case is the clause "and contact our office to explain the nature of the dispute."

The *Mendez* court objected to the entire statement, and did not specify precisely which part of it created the FDCPA violation. In one part of the opinion, the court points out that the plaintiff's issue with the statement was the first four words: "'*If for some reason.*'" *Id.* at *3. But later, the court indicates that the "statement directing the debtor to contact the sender and 'explain the nature of the dispute' if she believes the debt is not valid" is the culprit. *Id.* at *5. Rather than splitting hairs trying to get to the root of the *Mendez* court's vexation, this court recognizes the *Mendez* decision as a rejection of the entire statement in that case which, as a whole, the *Mendez* court found could confuse an unsophisticated debtor to the extent that she might believe that she must contact the creditor and explain her valid reason for disputing the debt in order to exercise her validation rights.

This court does not agree with plaintiffs that the *Mendez* opinion found as invalid only the first part of the statement (which matches up with the statement in the case at hand), nor does this court agree with the defendant that the renegade segment is merely the final clause (which is absent from the statement in the case at hand). The *Mendez*

10

decision does not warrant judgment for either party. The *Mendez* court made a finding based on the entirety of the statement at issue in that case. Whether the phrase "If for some reason you believe this debt is not valid, please review your rights at the bottom of this letter" would be as confusing to debtors without the additional request that the debtor "contact our office to explain the nature of the dispute" was not litigated in *Mendez*. This case involves a statement that constituted only part of the statement analyzed in *Mendez*, and must be examined according to its own merits. The issues are not identical, and do not warrant application of collateral estoppel.

    2. *Plaintiffs' motion for summary judgment*

    The court now turns to plaintiffs' claim that the statement violates the requirement that a validation rights disclosure be made in a nonconfusing manner, as set out in *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997). Plaintiffs' first theory is that the statement requires the debtor to have some reason to exercise her validation rights, which contradicts and limits the rights granted by the FDCPA. (Pls.' Mem. Supp. Mot. Summ. J. 7). A debtor, plaintiffs argue, has the right to request validation of a debt for a number of reasons that do not require that the debtor have "some reason" to believe that the debt is "not valid," such as when the debtor does not recognize the debt, questions the amount claimed or the computation used, believes that her account has not been properly credited for past payment, or is unsure who to pay because more than one collection agency is seeking payment of the same debt. (Pls.' Mem. Supp. Mt. Summ. J. 6). According to plaintiffs, the language used in defendant's letter unlawfully

11

confuses debtors into believing that their rights to request validation are limited only to situations where they believe the debt is not valid.

Defendant argues that the language was simply a reference to the validation rights appearing later in the letter, and the letter did not require that the debtor provide this reason to the creditor, nor did it require the reason to be a good or valid one. (Def.'s Br. Supp. Cross-mot. Summ. J. 7). Defendant further points out that this additional language does not muddle the validation rights disclosure later in the letter, but actually enhances it because it seeks to ensure that debtors will be informed of their rights. (Def.'s Br. Supp. Cross-mot. Summ. J. 2-3).

Section 1692g(a)(4) requires that a collection letter include a clause informing the debtor of her right to request, within thirty days of receiving the letter, that the creditor validate the debt by providing the debtor with verification of the debt or a copy of the judgment against her. "A debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). A collection letter cannot muddle the validation rights disclosure with other language in the letter that would create "legal gibberish" and confuse consumers as to their legal rights to request validation of the debt sought. *Bartlett*, 128 F.3d at 501. For example, a collection letter which informed the debtor that "[a]ny delay, or attempt to avoid this debt, may affect your ability to use checks" was impermissible as it suggested to the debtor that by exercising her validation rights, she might be punished. *Ozkaya v. Telecheck Servs., Inc.*, 982 F. Supp. 578, 583 (N.D. Ill. 1997).

12

Another collection letter which stated that the debt was placed in creditor's hands for "immediate collection," with a request that the debtor remit payment in full, obscured the fact that the debtor had thirty days to request validation of the debt enough to survive a motion to dismiss. *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999).

In this case, it is not clear that the statement will confuse the unsophisticated consumer. Plaintiffs' reading of the statement "If for some reason you believe this debt is not valid, please review your rights listed at the bottom of this letter" is an unrealistic and idiosyncratic interpretation that no unsophisticated consumer would likely hold. This becomes particularly clear when one applies the reasonableness element so critical in the Seventh Circuit's "unsophisticated consumer" analysis. It is not clear that an unsophisticated debtor who possesses a rudimentary knowledge of the financial world, who is capable of making logical deductions, would view this statement as more than a reminder. Reminders are not only permissible, but have been found to save an otherwise potentially confusing validation disclosure from summary judgment in plaintiff's favor. *E.g., Youngblood v. GC Servs. Ltd. P'ship,* 186 F. Supp. 2d 695, 699 (W.D. Tex. 2002) (holding that a validation notice located on the back of a collection letter did not qualify as confusing as a matter of law considering a prominent instruction on front of letter to see reverse side for important information). It is certainly not clear that the inclusion of the statement renders the collection letter anything close to "legal

gibberish" that would create an unacceptable level of confusion such that a significant fraction of the letter's intended recipients would be misled. *Bartlett,* 128 F.3d at 501.

Plaintiffs liken defendant's statement to one found sufficient to create an issue of fact for trial in *DeSantis v. Computer Credit, Inc.*, 269 F.3d 159 (2d Cir. 2001). In that case, a letter stated, twice, that the debtor must either pay or provide a valid reason for not paying. *Id.* at 160. This statement was found to have interfered with the message required by the FDCPA because an unsophisticated consumer might think that her validation rights would only arise if she provided the creditor with a valid reason for requesting validation. *Id.* Plaintiffs reliance on *DeSantis* is unfounded. The statement in this case is not so clearly confusing on its face that debtors would believe that they need to *provide* the creditor with "some reason" in order to exercise their validation rights. The statement reads: "If for some reason you believe this debt is not valid, please review your rights listed on the bottom of this letter." This language simply reminds the debtor that if she has "some reason" to believe the debt is not valid, she should read the validation rights at the end of the letter. A reminder to the debtor to read a statement of her rights is very different from a requirement that the debtor *provide the creditor* with a reason for disputing the debt, as was the case in *DeSantis*. A significant fraction of unsophisticated consumers would not read a reminder such as the one in defendant's letter as a substantive limit on their right to dispute the validity of the debt.

Plaintiffs cite, in addition to *DeSantis*, a number of other cases holding that, generally, statements creating conditions on and prerequisites to the exercise of a

14

debtor's validation rights are impermissible to the extent that they contradict,

overshadow, or limit the rights provided by the FDCPA. (Pls.' Reply 3). The court does

not question the wisdom of these cases, but finds them inapplicable to the case at hand.

In every case cited by plaintiffs, the creditor required the debtor to provide something,

and it was that requirement to *provide something* that created the FDCPA violation.

*Whitten v. ARS Nat'l Servs., Inc.,* No. 00 C 6080, 2002 WL 1332001, at *2 (N.D. Ill. June 18,

2002) (requiring debtor to provide "suitable dispute documentation"); *Castro v. ARS*

*Nat'l Servs., Inc.,* No. 99 Civ. 4596, 2000 WL 264310, at *3 (S.D.N.Y. Mar. 8, 2000) (same);

*Sambor v. Omnia Credit Servs., Inc.,* 183 F. Supp. 2d 1234, 1240 (D. Haw. 2002) (same);

*Frey v. Satter, Beyer, & Spires,* No. 98 C 3957, 1999 WL 301650, at *1 (N.D. Ill. May 3, 1999)

(requiring debtor to "indicate a dispute"). These cases are not analogous to the case at

hand. Here, defendant's statement does not require the debtor to provide, indicate,

submit, state, write down, convey by telepathy, or otherwise impart to the creditor any

writing, oral utterance, or other communication of any kind other than the FDCPA-

approved written verification request described in the FDCPA-compliant[5] validation

rights disclosure paragraph. Even an unsophisticated, reasonable consumer would

construe the letter as such.

Plaintiffs' second theory on this issue is that the statement will cause debtors

who believe they have no valid reason to doubt the validity of the debt to disregard,

---

[5] Plaintiffs do not dispute that the validation rights disclosure paragraph, in and of itself, meets the requirements of the FDCPA. (Pls.' Mem. Supp. Summ. J. 6).

and in fact fail to read at all, the validation rights disclosure. But this potential confusion to the unsophisticated consumer does not appear plainly on the face of the collection letter. It is not clear that an unsophisticated, but reasonable, consumer receiving this collection letter would skip the entire validation rights disclosure paragraph appearing later in the letter, especially since that paragraph is labeled, in underlined capital letters, "<u>IMPORTANT CONSUMER INFORMATION</u>." The disclosure paragraph is also not hidden on the back of the page, or in small print, or otherwise overshadowed or concealed in the letter. The statement beginning "If for some reason" does not appear in a different font or size, nor is it bolded, italicized, underlined, or otherwise so distracting that a recipient would disregard other parts of the letter. Construed most favorably to defendant, the statement is a reminder to the recipient, who doubts the debt's validity for some reason, to read the disclosure paragraph. The alleged FDCPA violation is not so clear as to permit a grant of summary judgment for the plaintiffs.

### 3. *Defendant's motion for summary judgment*

Defendant's motion for summary judgment on this issue, however, is a different story. Construing all inferences in favor of plaintiffs, and assuming that this court is mistaken as to the clarity of the statement's meaning, the statement could at best be characterized as only *possibly* confusing, but still not apparently confusing on its face. Arguably, it is possible that an unsophisticated consumer would read the statement as an indication that she must have a valid reason to dispute the debt, and similarly it is possible that an unsophisticated consumer would read the statement, conclude the

16

disclosure would not apply to her, and skip the entire disclosure altogether. Of course, anything is possible. But this potential for confusion does not appear on the face of the letter, and it is definitely not clear that this reading of the statement would be something other than an idiosyncratic one which would occur to only a very small fraction of the letter's intended recipients. In the words of the Seventh Circuit, "[v]iewing the evidence in a light most favorable to the plaintiffs, there is no obvious contradiction or overshadowing or falsity or unfairness in these letters as they allege." *Durkin*, 406 F.3d at 422.

The Seventh Circuit has unambiguously and repeatedly held that in the context of a defendant's summary judgment where the court finds a lack of clear confusion on the face of the letter, "the mere possibility of merit does not create a triable issue. To proceed to trial, the plaintiffs were thus required to submit evidence in addition to the letters and their affidavits." *Id.* As indicated above, plaintiffs in this case have produced no extrinsic evidence regarding the confusing nature of the letters. Therefore, there is an "insufficient evidentiary basis for supposing that a statement entirely clear on its face is actually unclear." *Taylor*, 365 F.3d at 575. Without such evidence, plaintiffs have not established that a triable issue of fact exists as to the confusing nature of the statement and cannot survive the defendant's motion for summary judgment on this issue.

B. *Confusing nature of disclosure of amount of debt owed*

The court now turns to the second issue briefed by the parties in their cross-motions for summary judgment: whether the reference to an "account balance," along with an additional clause stating that "[i]nterest may accrue on unpaid balances," is confusing to an unsophisticated consumer as to the amount of debt owed, considering later language in the letter requesting that the debtor honor her "contractual obligations."

The FDCPA requires that a collection letter state the "amount of debt" that the creditor is trying to collect. 15 U.S.C. § 1692g(a)(1). It is not enough that the letter simply states the amount of debt owed; the statement must be clear enough that the recipient will understand it, which, as explained above, is measured by the "unsophisticated debtor" standard. *Taylor*, 365 F.3d at 574. For example, courts have consistently held that it is impermissibly confusing to suggest that a debtor may only discover the amount she is being asked to pay by contacting the creditor by, for example, calling a phone number. *See, e.g., Chuway,* 362 F.3d at 948; *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.,* 214 F.3d 872, 875-76 (7th Cir. 2000); *Zaborac v. Phillips and Cohen Assocs., Ltd.,* 330 F. Supp. 2d 962, 969 (N.D. Ill. 2004). Courts have also held that a letter must state the whole amount owed as of the date of the letter. *See, e.g., Miller,* 214 F.3d at 875; *Bawa v. Bowman,* No. IP00-1319-C-M/S, 2001 WL 618966, at *3-4 (S.D. Ind. May 30, 2001); *Wilkerson v. Bowman,* 200 F.R.D. 605, 607-08 (N.D. Ill. 2001).

The language complained of appears only in the letters addressed to plaintiffs

Dixon and Smith. The pertinent parts of these letters read as follows:

> ACCOUNT BALANCE: $[x.xx]  (Interest may accrue on
> unpaid balances)
>
> Dear [Name],
>
> The above referenced client has placed your account with
> our office for collection. This decision was made due to your
> continued failure to meet *your contractual obligation*. If for
> some reason you believe this debt is not valid, please review
> your rights listed at the bottom of this letter.
>
> If the debt is not in dispute, then you have an important
> decision to make: honor *your contractual obligation* and
> receive significant positive benefits from satisfying the debt
> or continue not honoring *your contractual obligation* and face
> the possibility of negative consequences.
>
> ...
>
> ...[T]he decision to proceed with further collection activity is
> determined by you and your willingness to honor *your
> commitment*.

(Pls.' Second Am. Compl. Ex. C-D, emphasis added).

### 1. *Plaintiffs' motion for summary judgment*

Plaintiffs claim that the letters "do not definitely state whether or not interest

does accrue, or whether interest has been added yet." (Pls.' Mem. Supp. Mot. Summ.

J. 9). Further, plaintiffs allege, other language in the letter demanding that the debtor

"honor your contractual obligation" is confusing because it is not possible to determine

from the letter whether this "contractual obligation" is the account balance or the

account balance plus any interest which might accrue. (Pls.' Mem. Supp. Mot. Summ. J. 9).

Plaintiff analogizes this case to *Chuway*, 362 F.3d at 947. In that case, a creditor's letter stated the following: "Please remit the balance listed above in the return envelope provided." So far so good, said the Seventh Circuit. The subsequent sentence, however, caused impermissible confusion: "To obtain your most current balance information, please call 1-800-916-9006." Because it was confusing from the two statements whether the debtor owed "the balance listed above" or some other "current balance," obtainable only by calling an 800 number, the creditor's collection letter violated the FDCPA. *Id.* Plaintiffs claim that the very fact that defendant used two different terms suggests that the two do not mean the same thing, and the letter is therefore analogous to the one in *Chuway*, which impermissibly referenced two possible amounts owed, creating confusion in violation of the FDCPA. (Pls.' Reply 6).

Defendant argues that *Chuway* is distinguishable from the case at hand because the *Chuway* letter set forth a "balance" and then a phone number to call to obtain "most current balance information," where defendant's letter does not refer debtors to other sources to obtain their balance information. (Def.'s Br. Supp. Cross-mot. Summ. J. 15). Defendant further asserts that the terms "account balance" and "contractual obligation" do not refer to two different balances, nor do they cause confusion as to whether two different balances exist, and therefore *Chuway* is not on point in this matter. (Def.'s Reply 8).

After careful consideration of plaintiffs' arguments, the court finds no obvious overshadowing, contradiction, or unfairness due to use of the term "contractual obligation." In context, the letter's use of "account balance," "debt," and "contractual obligation" work together to inform the reader that one amount of money is owed: the dollar amount appearing after "ACCOUNT BALANCE:" on the top of the page. This is not to say that the terms "contractual obligation," "debt," and "account balance" are all synonymous. Presumably, the "contractual obligation" is the debt incurred with the original creditor (e.g., Capital One), while the "debt" or "account balance" is that debt due now from the defendant debt collector who purchased the debt from the original creditor. The difference in terminology is important in the debt collection business, as a debt collector needs words with which to explain how it has become the entity to whom the debt is now owed. The terms may have different meanings, but both terms work together in the letter to solicit the same amount. Unlike *Chuway*, where a debtor could have easily been confused as to whether the dollar amount appearing in the letter really was the amount due and owing, the terms in defendant's letter, which describe the debt at different stages of ownership, are not used in a way that suggest that anything is owed other than the dollar amount following the phrase "ACCOUNT BALANCE."

In contrast, in cases where confusion as to the amount owed was found on the face of the letter, the facts presented obvious complications that no unsophisticated consumer could be expected to understand. For example, in *Wilkerson*, the defendant's collection letter stated the following: "Balance: $ 3484.02, less applicable rebate, if any,

$ .00 accrued interest and/or late charges, up to $ 350.00 attorney fees, exact amount to be determined by agreement between you and us or by a court, and 20.00% interest per annum from February 4, 2000." 200 F.R.D. at 606. By comparison, it is not clear on the face of defendant's letter that an unsophisticated consumer would be confused as to the amount owed because the letter used different terms to refer to the debt in different stages of ownership, particularly when only one "account balance" appears in the letter, at the top of the page, in capital letters.

Another impermissibly confusing letter provided a debtor only with the unpaid principal balance on the loan, with a note that this amount did not include a number of other additional monies owed, including interest and late charges. *Miller*, 214 F.3d at 875. In that case, the letter itself admitted that it failed to completely disclose the amount owed. The court held that the FDCPA required that the creditor disclose the "total amount due – interest and other charges as well as principal – on the date the dunning letter was sent." *Id.* at 875-76.

There is no indication that defendant's letters in this case failed to disclose any interest or charges owed at the time the letter was sent. The letters do state, permissibly, that interest may accrue on unpaid balances, but the letters do not suggest that any undisclosed amount of interest had accrued yet, or that there were some other amounts owed, which the creditor was simply refusing to reveal the precise amount of. The analogy to *Miller* is therefore incomplete. One can infer (in defendant's favor, as is appropriate when considering plaintiff's motion) that the statement "interest *may*

22

accrue" indicates that none has yet. The letters submitted were, after all, the first dunning letters received by plaintiffs from defendant. The letter provides an "account balance," not just an "account principal," and it can be inferred that it means what it says- that it is the account balance. It is reasonable to infer that the letters accurately state the total amount due on the day of the dunning letter, as required by *Miller*. Therefore, plaintiffs cannot rest on an analogy to the facts in *Miller* in order to obtain summary judgment in their favor.[6]

In sum, plaintiffs have not established their claim that confusion is apparent just from reading the letter sufficient to warrant judgment at this stage of the litigation. A close question does not a plaintiff's summary judgment make. With all inferences construed in defendant's favor, there is an issue of fact as to whether the references to the debtor's "contractual obligation" and "commitment" are confusing to the unsophisticated debtor, and therefore plaintiffs may not succeed on summary judgment on this issue.

### 2. *Defendant's motion for summary judgment*

Defendant bases its cross-motion for summary judgment on this issue on the notion that plaintiffs' arguments were laid to rest in the Seventh Circuit's decision in *Taylor*, 365 F.3d 572. According to defendant, *Taylor* holds that it is not a violation of the

---

[6] Plaintiffs also point to the "safe harbor" language provided by *Miller*, the use of which would assure compliance with the FDCPA. (Pls.' Reply 4). The *Miller* court was careful to point out, however, that "we do not hold that a debt collector must use this form of words to avoid violating the statute." 214 F.3d at 876. Defendant's failure to use the *Miller* safe harbor language does not warrant summary judgment in plaintiffs' favor.

FDCPA to inform a debtor that interest may accrue on an unpaid balance. (Def.'s Br. Supp. Cross-mot. Summ. J. 13-14). Defendant is correct in asserting that *Taylor* stands for the proposition that a creditor may inform a debtor that interest may accrue on unpaid balances. *See Taylor*, 365 F.3d at 575. A declaration that interest may accrue is a "clear statement of a truism," and is not so confusing in and of itself as to violate the FDCPA. *Id.* However, in relying on *Taylor*, defendant misses the crux of plaintiffs' argument, which is that other language in defendant's letter (namely, the request that the debtor pay her "contractual obligation") muddles what might otherwise be a clear statement of a truism, and is confusing to debtors as to what amount they need to pay. This problem was not addressed in *Taylor*, and therefore that decision does not obviate the issue in this case. Indeed, in this case there is a layering of the issues in both *Taylor* and *Chuway*, which neither case can dispose of entirely.

But since *Taylor* at least solves the problem of whether it is permissible to include a notice of accrual at all, the question then becomes whether, construing all factual inferences in plaintiffs' favor, defendant's letter (accrual notice and all) is, like the letter in *Chuway*, confusing to an unsophisticated debtor as to the amount of debt owed. Again, the court must consider the nuances particular to FDCPA summary judgment cases described above, where extrinsic evidence plays a critical role.

Plaintiffs argument on the confusing nature of the term "contractual obligation" issue is not such a "fantastic conjecture" that it should be rejected straight away. *Taylor*, 365 F.3d at 574. However, for many of the reasons discussed above with regard to

plaintiffs' motion for summary judgment on this issue, the language in defendant's letter is still not the "clearest case" of confusion which would exempt plaintiffs from the requirement that they present extrinsic evidence of confusion to survive defendant's summary judgment. *Id.* at 575. The term "contractual obligation" does not appear with such frequency or prominence that it clearly overpowers the message that the amount owed is the account balance on the top of the page. The "account balance" does not require calculations, is not presented with complicated formulas, and does not include vague references to other undisclosed charges. Debtors are not required to call a number or otherwise contact the creditor to determine the exact amount of either the "contractual obligation" or "account balance." In sum, it is not clear that a significant fraction of unsophisticated debtors would read the term "contractual obligation" as a reference to some other amount besides the account balance.

Indeed, it is *possible* that the use of "contractual obligation" in defendant's letter might cause confusion. However, "the mere possibility of merit does not create a triable issue." *Durkin*, 406 F.3d at 422.  As the court has now stated numerous times in this opinion, on an FDCPA defendant's motion for summary judgment, when the letter is not confusing on its face, the plaintiff must put forth extrinsic evidence to establish a genuine issue of fact for trial. This is required in "any but the clearest case." *Taylor*, 365 F.3d at 575. Plaintiffs have not submitted any such evidence in this case. Therefore, summary judgment for defendant on this issue is proper.

**IV. CONCLUSION**

For the foregoing reasons, the court finds that both claims raised in plaintiffs'
Second Amended Complaint as to the confusing nature of defendant's collection letters
are insufficient as a matter of law, leaving no issues for trial. The court **DENIES**
plaintiffs' motion for summary judgment (docket # 23) , and **GRANTS** defendant's
motion for summary judgment (docket # 34). The Clerk is directed to **ENTER FINAL
JUDGMENT** stating: Judgment is entered in favor of defendant M.R.S. Associates, Inc.,
and against plaintiffs Ruby M. Lucas, Emma Fuentes, Wilma G. Dixon, and Barbara
Smith, who shall take nothing by way of their complaint.


**SO ORDERED.**

ENTER: August 11, 2005

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT